UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER F. TESS,

        Plaintiff,         CIVIL ACTION NO. 13-cv-10191

  vs.

                     DISTRICT JUDGE AVERN COHN

COMMISSIONER OF          MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Christopher Tess seeks judicial review of Defendant the Commissioner of Society Security's determination that he is not entitled to social security benefits for his physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment and/or Remand (docket no. 10) and Defendant's Motion for Summary Judgment (docket no. 14). Plaintiff filed a Response to Defendant's Motion. (Docket no. 15.) The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation pursuant to Eastern district of Michigan Local Rule 7.1(f)(2).

## I.    RECOMMENDATION:

This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 10) be DENIED and that Defendant's Motion for Summary Judgment (docket no. 14) be GRANTED.

## II.    PROCEDURAL HISTORY:

Plaintiff filed an application for Disability Insurance Benefits and an application for Supplemental Security Income with protective filing dates of October 17, 2011, alleging that he had been disabled since August 3, 2009 due to back pain, depression, and an anxiety disorder. (*See* TR 18, 20.)  The Social Security Administration denied benefits, and Plaintiff requested a *de novo* hearing which was held on September 27, 2012, before Administrative Law Judge (ALJ) Timothy Scallen, who subsequently found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy.  (TR 18-28.)  The Appeals Council declined to review the ALJ's decision, and Plaintiff commenced this action for judicial review.  The parties then filed their instant Motions.

### III.     PLAINTIFF'S TESTIMONY AND MEDICAL EVIDENCE

#### A.     Plaintiff's Testimony

Plaintiff was 27 years old at the time of the administrative hearing and 23 years old at the time of alleged onset.  At the time of the hearing, Plaintiff lived with his six-year-old son and his brother.  (TR 51.)  Plaintiff testified that he had a GED and had taken some college classes, but he did not have any college credits.  (TR 38.)  He added that in 2006 he earned a certificate in Homeland Security, which he received through training with a Job Corps program.  (TR 38-39.)  Plaintiff told the ALJ that he had worked in October of 2011 for three days as a late-night cleaning person and drive-through attendant at a donut-and-coffee shop, but he was fired due to absences caused by panic attacks.  (TR 39-40.)  Plaintiff also indicated that he had worked as a temporary, two-week employee at a county fair, where he took payment for parking and admission.  (TR 41.)  Plaintiff testified that his last full-time employment was in June of 2009 with a security company from which he was also fired due to poor attendance caused by panic attacks.  (TR 41-42.)

Plaintiff testified that when he had panic attacks, his heart rate would go up, he would sweat,

he would "get shaky," and he would have racing thoughts. (TR 43.) He told the ALJ that he would have to sit or lie down to relieve his anxiety. (TR 43.) Plaintiff testified that he took no medications for his panic attacks until February of 2012, when his new psychiatrist (whom Plaintiff started seeing in November of 2011) started him on Klonopin, Trazodone, and Zoloft. (TR 43-44.) Plaintiff further testified that his psychiatrist diagnosed him with agoraphobia in February 2012. (TR 45.) Plaintiff said that he began to see a psychiatrist instead of his primary doctor because his panic attacks increased in frequency; as of November 2011, Plaintiff was having three or four panic attacks every day, each lasting two to five minutes followed by up to 30 minutes of racing thoughts. (TR 44.) Plaintiff told the ALJ that he would have to lie down for three or four hours each day to cope with his panic attacks. (TR 45.) Plaintiff also told the ALJ that he had been diagnosed with depression and that while he contemplated suicide daily, he had attempted suicide only once, in 2003. (TR 55.)

Plaintiff further testified that he had chronic issues with lower-back pain, which had been ongoing for five or six years. (TR 46.) Plaintiff told the ALJ that his back pain consisted of aches two or three times a week for an hour or two at a time, but in the three or four months leading up to his hearing, his pack pain had become a constant, sharp pain. (TR 46-47.) Plaintiff testified that his pain was a nine on a ten-point scale and that taking Norco and Tramadol would reduce the pain to an eight. (TR 47-48.) He added that the pain would radiate to his left leg about two times a week for three to four hours. (TR 48.) He also told the ALJ that it hurt to lift a gallon of milk, that he could only sit for 20 to 25 minutes at a time, and that he could only walk about one city block. (TR 49-50.) He then told the ALJ that he could not stoop, kneel, crouch, or crawl for more than 10 minutes without pain in his back. (TR 50.) He also told the ALJ that when the pain was bad or when he had a panic attack, he could not maintain focus. (TR 54.) Plaintiff testified that he walked

3

with a cane when his leg hurt.  (TR 48.)  At the time of the hearing, Plaintiff had been seeing a physical therapist for two weeks.  (TR 48.)  He had also seen a physical therapist a few months earlier with poor results, and he had received two epidural injections in the 5 weeks leading up to the hearing.  (TR 56.)  Plaintiff told the ALJ that he had discussed surgery with his doctor, but his doctor wanted to try physical therapy first.  (TR 57.)

Plaintiff testified that he avoided steps, that he did not drive, and that he could generally care for himself, but he needed help getting out of the bathtub.  (TR 50, 51.)  Plaintiff added that he had pain when he attempted household chores and that while he did do some grocery shopping, he did so at midnight to avoid people.  (TR 52.)  Plaintiff testified that on an average day, he woke up around 9:00 a.m., took his medication, and would lie back down about an hour later for three hours.  (TR 52.)  Plaintiff stated that he used to go out bowling or go to concerts, but now he spent most of the day watching "Reality TV. Things like *Cops*."  (TR 54.)  Plaintiff told the ALJ that he got along with his family, but he didn't attend any family gatherings and he didn't have any friend support because he had a "hard time making and maintaining friends."  (TR 53.)  He noted that he did not talk on the phone very often and that he communicated with his mother on Facebook.  (TR 53-54.)

### B.   Medical Record

Defendant asserts that "[t]he ALJ's recitation of the relevant medical evidence . . . [is] sufficiently detailed and need not be presented here.  (Docket no. 14 at 8.)  Plaintiff sets forth his "Medical Evidence" as an itemized list of 19 medical incidents between August 28, 2009, and September 17, 2012.  (Docket no. 10 at 14-15.)  Defendant does not suggest that Plaintiff's listing is inaccurate, and the listing does not contradict any evidence discussed by the ALJ.  Thus, the Court, having conducted an independent review of Plaintiff's medical record, hereby incorporates

4

by reference the medical record as set forth in the ALJ's opinion (TR 21-27) and as set forth in Plaintiff's Motion (docket no. 10 at 14-15). The Court will incorporate additional comments and citations as necessary throughout this Report and Recommendation.

Additionally, as part of his request for a sentence-six remand under 42 U.S.C. § 405(g), Plaintiff provides new evidence. (*See* docket no. 10 at 29-37.) In March 2013, six months after his administrative hearing, Plaintiff was admitted to Henry Ford Macomb Hospital for "left-sided hemilaminectomy with medial facetectomy, foraminotomy, and discectomy at L5-S1" due to "ongoing complaints of left lower extremity pain . . . [and] back pain." (*Id.* at 29.) Plaintiff was discharged within one day and was "doing fairly well." (TR 30.) He was told to follow up with his doctor in two weeks. (TR 30.) Records from his follow-up appointment were not provided.

### C.   Vocational Expert's Testimony

The ALJ asked the VE to assume that a hypothetical person of the same age, education, and work experience as Plaintiff could perform work at all exertional levels but was limited to performing simple, routine, and repetitive tasks in a low-stress environment that provided for no interaction with the public and only incidental interaction with coworkers. (TR 59-60.) The VE testified that such an individual could not perform any of Plaintiff's past relevant work but could perform work, for example, as a commercial institution cleaner or a store laborer. (TR 60.)

The ALJ then asked the VE to assume that the same individual was limited to medium work. (TR 61.) The VE testified that such an individual could work as a store laborer or a hand packager. (TR 61.) The ALJ then asked the VE to assume that the same individual was limited to light work, to which the ALJ responded that such an individual could work as a small-products assembler or an office helper. (TR 61.) And when asked, the VE testified that if the same person were limited to sedentary work, he could work as a surveillance monitor (excluding positions with homeland

security or gaming institutions) or a person who enters addresses on a computer. (TR 62.) The ALJ then asked whether the job availability would be impacted if the individual were limited to "frequent climbing of stairs and ramps, balancing, stooping, kneeling, crouching, and crawling." (TR 62.) The VE testified that it would not. (TR 62.)

Finally, the ALJ asked the VE what types of activity would be tolerated by employers in terms of absenteeism and remaining on task. (TR 62-63.) The VE testified that an individual would generally be permitted a 15-minute break in the first and second halves of an eight-hour work day along with a 30-minute break for lunch and one absence per month with a physician's excuse. The VE also testified that an individual would have to remain on task at least 90% of the day. (TR 63.)

## V.     LAW AND ANALYSIS

### A.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536

(6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.      Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)      Plaintiff was not presently engaged in substantial gainful employment; and

(2)      Plaintiff suffered from a severe impairment; and

(3)      the impairment met or was medically equal to a "listed impairment;" or

(4)      Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence"

7

may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.      Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).  Plaintiff argues that this matter should be reversed or remanded under sentence four because (1) the ALJ "did not properly assess the Plaintiff's anxiety, depression, and panic attacks," (2) "failed to give proper weight to the opinions and assessments of the treating medical specialists and examiners," (3) "failed to pose complete and accurate hypothetical questions to the [VE]," and (4) erred when he found that Plaintiff could perform medium work beginning June 1, 2012."  (Docket no. 10 at 16-26.)  Additionally, Plaintiff argues that this matter should be remanded under sentence six in light of Plaintiff's March 2013 back surgery.  (*Id.* at 23-26.)

### 1.      The ALJ's Assessment of Plaintiff's Mental Impairments, and the ALJ's

**Assessment of the Medical Opinions of Record**

Plaintiff's argument in this regard is not entirely clear, but he appears to argue that the ALJ erred when he limited Plaintiff to "simple, routine, low stress jobs with no interaction with co-workers or the public" and that the ALJ made this erroneous decision after failing to give proper weight to Plaintiff's treating physicians. (*Id.* at 16.)  Additionally, however, Plaintiff appears to acknowledge that the ALJ "criticized the assessments because they were without any objective clinical narrative substantiation" and then asserts that "the ALJ had an affirmative duty to obtain or request that the plaintiff's representative obtain clinical narrative substantiation." (*Id.* at 17.) Plaintiff then asserts that if the ALJ had accepted the opinions of the treating physicians, the ALJ would have found that his "mental limitations prevent[ed] him from maintaining the production standards and expectations included in the [occupations provided by the VE]." (*Id.* at 20.)  Thus, the undersigned will first address whether the ALJ properly evaluated the opinions of the treating physicians and whether the ALJ was required to request additional evidence in support of the opinions.

The ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record.  20 C.F.R. § 404.1527(c)(2).  It is equally well settled that the ultimate issue of disability is reserved to the Commissioner and not the treating or examining physician. *Kidd v. Comm'r*, 283 Fed. Appx. 336, 341 (6th Cir. 2008).  Thus, when a medical or non-medical source offers an opinion on "an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight." *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)).  The opinion of an examining source is generally accorded more weight than is the opinion of a source who did not examine the claimant.  20 C.F.R. §

9

404.1527(c)(1).   The opinion of a state agency medical or psychological consultant is reviewed in the same manner as is the opinion of a nonexamining physician or psychologist.   20 C.F.R. §404.1527(e).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion."   20 C.F.R. § 404.1527(c)(2).   Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."   *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)).   If the opinion of a treating source is not afforded controlling weight, an ALJ must apply certain factors in determining what weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source.   *Wilson*, 378 F.3d at 544 (citation omitted).   Even then, a finding that a treating-source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected.   Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4.

Additionally, the Sixth Circuit has upheld the decision of an ALJ which gave less than controlling weight to a treating physician without specifically analyzing the factors set forth in 20 C.F.R. § 404.1527(c) where the ALJ provided "good reason" for the decision.   *See Infantado v. Astrue*, 263 Fed.Appx. 469, 473-74 (6th Cir.2008).   There is no per se rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. § 404.1527(c)(2)-(6).   *Norris v.*

10

*Comm'r*, No. 11-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r*, 394 Fed. Appx. 216, 222 (6th Cir. 2010)).  Moreover, an ALJ's failure to discuss the factors of § 1527(c)(2)-(6) may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [Section 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r*, 195 Fed. Appx. 462, 470 (6th Cir. 2006) (citing *Wilson v. Comm'r*, 378 F.3d 541, 547 (6th Cir. 2004)).

Plaintiff argues that the ALJ failed to properly consider the reports authored by Dr. S. Sarvananda, M.D. (Plaintiff's therapist), on April 17, 2012, and Dr. Philip Maharaj-Prasad, M.D., (a consultative examiner) on January 15, 2012.  (Docket no. 10 at 18-20.)  The ALJ noted that these reports "consist of symptom checklists without any objective clinical narrative substantiation and, thus, cannot be afforded significant weight in the evaluation of Claimant's residual functional capacity."  (TR 25.)  Defendant argues that the lack of clinical and objective findings in support of the reports is fatal.  (*See* docket no. 14 at 14 (citing *Price v. Comm'r of Soc. Sec.*, 342 F.App'x 172, 176 (6th Cir. 2009); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)).)  The undersigned agrees.  *See Carr v. Comm'r of Soc. Sec.*, No. 12-14426, 2013 WL 5775391, *12 (E.D. Mich. Oct. 25, 2013) (Borman, J.) (adopting Report and Recommendation of Binder, M.J.) (citing *Teague v. Astrue*, 638 F.3d 611, 616 (8th Cir.2011) (holding that ALJ properly discounted doctor's opinions on a check-off form which "did not cite clinical test results, observations, or other objective findings as a basis for determining [the plaintiff's] capabilities"); *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir.2010) (holding that the ALJ properly discounted the treating physician's opinion that consisted

11

of checklist forms which cited no medical evidence and provided little or no elaboration)).

Moreover, Plaintiff appears to acknowledge the lack of supporting evidence in making his assertion that the ALJ was required to obtain such evidence. 20 C.F.R. § 416.912 provides, in relevant part, as follows:

> (a) General. In general, *you have to prove to us* that you are blind or disabled. This means that *you must furnish medical and other evidence* that we can use to reach conclusions about your medical impairment(s). . . .
>
>                           .     .     .
>
> (c) *Your responsibility. You must provide medical evidence* showing that you have an impairment(s) and how severe it is during the time you say that you are disabled. *You must provide evidence*, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim. . . .
>
>                           .     .     .
>
> (d) *Our responsibility*. Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application. *We will make every reasonable effort to help you get medical reports from your own medical sources* when you give us permission to request the reports.
>
> > (1) Every reasonable effort means that we will make an initial request for evidence from your medical source and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, we will make one followup request to obtain the medical evidence necessary to make a determination. . . .

10 C.F.R. § 416.912 (emphasis added). Thus, as a general matter, it is a claimant's burden to provide a complete record, but the ALJ must put forth the statutorily required "reasonable effort" to assist the claimant.[1] *See, e.g.*, *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) ("[T]he

---

[1]"'[A]n [ALJ's] . . . basic obligation to develop a full and fair record rises to a special duty when an unrepresented claimant unfamiliar with hearing procedures appears before him.' . .

claimant must demonstrate that she has a 'severe impairment.'" (citation omitted)); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir.1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the [Commissioner] . . . to make a disability determination, rests with the claimant."); *cf.* 42 U.S.C. § 405(g) (The sixth sentence of this provision . . . requires a claimant seeking remand based on "new evidence" to show "good cause" why the evidence was not previously "incorporate[d] . . . into the record.").

Tellingly, however, Plaintiff does not argue that such information actually exists; Plaintiff merely argues that the ALJ failed to request any additional information. The ALJ and Plaintiff's attorney even discussed all of the medical records at the start of Plaintiff's administrative hearing. (TR 36.) Plaintiff's attorney agreed to the admission of the exhibits and discussed some specific exhibits that were duplicates or unnumbered, and when the ALJ asked if he had "anything else," Plaintiff's attorney answered, "No." (TR 37.) Thus, it appears that Plaintiff is asking the Court to order that this matter be remanded for the ALJ's failure to request Plaintiff's physicians to provide records that do not exist. The undersigned will not make such a recommendation. Because the undersigned finds that the ALJ did not err when he (1) failed to request additional information from Plaintiff's physicians and (2) afforded less than substantial weight to the opinions in question, and because Plaintiff's remaining argument in this regard relies on these opinions being afforded greater

---

. To satisfy this special duty[,] the [ALJ] . . . must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.' . . . He must be 'especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.'" *Teverbaugh v. Comm'r of Soc. Sec.*, No. 02-71076, 2002 WL 32087466, *5 (E.D. Mich. Dec. 30, 2002) (Morgan, M.J.) (quoting *Lashley v. Sec'y of Health & Humans Serys.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983) (citations omitted)) (omissions and modifications in original), *rejected in part on other grounds by Teverbaugh v. Comm'r of Soc. Sec.*, 258 F.Supp.2d 702 (E.D. Mich. 2003) (Roberts, J.). Here, however, Plaintiff neither alleges nor could he support any assertion that the ALJ was required to undertake such a special duty. Instead, Plaintiff contends that the ALJ failed to fulfill his basic obligation to put forth a reasonable effort in assisting Plaintiff.

13

weight, the undersigned also finds that the ALJ did not err when he limited Plaintiff to performing simple, routine, low-stress tasks with no interaction with co-workers or the public." (*See* TR 24.)

### 2.     The ALJ's Hypothetical Questions to the VE

Plaintiff argues that the ALJ erred in the formulation of the hypothetical questions presented to the VE because they did not accurately describe his limitations. (Docket no. 10 at 21-23 (citing *Cole v. Sec'y of HHS*, 820 F.2d 768, 775 (6th Cir. 1987)).) But the ALJ is only required to incorporate in his hypotheticals those limitations that he finds credible and supported by the record. *See Casey v. Sec'y of HHS.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Here, the ALJ presented all of the limitations in Plaintiff's RFC in his hypothetical questions to the VE, and the VE testified that there are jobs available for a person with these limitations. Thus, in substance, Plaintiff's argument relies on the Court finding that the ALJ improperly assessed Plaintiff's mental limitations when he discounted his physician's opinions. In particular, Plaintiff argues that while the ALJ "found that [Plaintiff] had moderate difficulties in social functioning and moderate difficulties with regard to concentration, persistence and pace[, t]he hypothetical question[s were] void of any mention of [these limitations]." As noted, however, the ALJ limited Plaintiff to "simple, routine, low-stress tasks with no interaction with co-workers or the public." The undersigned finds that these limitations account for the limitations that the ALJ found credible and supported by the record. Therefore, Plaintiff's argument fails.

### 3.     The ALJ's Finding that Plaintiff Could Perform Medium Work Beginning June 1, 2012, and Plaintiff's Request for a Sentence-Six Remand

As Plaintiff states, under the Act, medium work is work that involves lifting no more than 50 pounds with frequent lifting and carrying of up to 25 pounds. 20 C.F.R. § 404.1567(c). Additionally, to perform medium work, an individual must be able to stand and walk, on and off,

14

for a total of six hours in an eight-hour work day. *Id.* Plaintiff asserts that "an individual with lumbar disc herniation, lower extremity numbness and tingling and antalgic gait would have great difficulty standing and walking 6 hours during an 8 hour workday, lifting 25 to 50 pounds." (Docket no. 10 at 24.) Plaintiff, however, provides no evidence to support this assertion. To the contrary, as Defendant notes, there is no evidence of Plaintiff's back impairment before June 2012, and when Plaintiff did report problems, objective testing showed only mild degenerative changes and mild disc bulging. (Docket no. 14 at 15.) Additionally, Plaintiff complained of only mild to moderate pain. (*Id.* (citing TR 501-02).)

Plaintiff's argument, then, rests on his request that this matter be remanded so that the ALJ can consider Plaintiff's March 2013 surgery as evidence of the severity of Plaintiff's impairment. Under 20 C.F.R. § 404.970(b), "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." And where the Appeals Council declines to consider such evidence, the court may still remand the case to the ALJ to consider this additional evidence, but only upon a showing that the evidence is new and material and "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). The party seeking remand has the burden of showing that it is warranted. *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).

"A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357 (*citing Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984)). "[F]or the claimant to satisfy his burden of proof as to materiality, he must demonstrate that there was a

15

reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711 (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)); *see also Cotton v. Sullivan*, 2 F.3d 692, (6th Cir. 1993).

Defendant appropriately acknowledges that the evidence presented by Plaintiff is new and that the nonexistence of the evidence is good cause for not providing it earlier. Defendant argues, though, that the evidence is not material because (1) it does not apply to the time period under consideration, and (2) because Plaintiff's allegedly disabling condition began in June 2012 and was alleviated with surgery in March 2013, his condition did not last the requisite 12-month period to be considered a disability under the Act. (*See* docket no. 14 at 20-21.)

Defendant's first argument relies primarily on the premise that "the Sixth Circuit has declined to remand disability claims in light of medical evidence of a deteriorating condition." (*Id.* at 21 (citing *Sizemore v. Sec'y of HHS*, 865, F.2d 709, 711 (6th cir. 1998)).) But while Defendant is correct that Plaintiff alleges that his surgery relates to his June 2012 back problems, Plaintiff has not alleged that his condition deteriorated. To the contrary, Plaintiff told the ALJ at the hearing that he and his doctors had discussed surgery, but his doctors recommended that they first attempt to alleviate his pain with physical therapy. (TR 57.) Thus, Plaintiff's condition need not have "deteriorated" for it to have resulted in surgery.

Nevertheless, the Court agrees with Defendant that Plaintiff has not provided any evidence to suggest that his condition lasted for a consecutive 12-month period. As noted, Plaintiff provided no evidence of his back problems before June 2012, and he has provided no evidence to suggest that his surgery was unsuccessful. Therefore, Plaintiff has failed to show with reasonable probability that the ALJ would have reached a different disposition if presented with this new evidence.

**VI.    CONCLUSION**

16

For the reasons stated herein, Plaintiff's Motion for Summary Judgment (docket no. 10) should be DENIED, and Defendant's Motion for Summary Judgment (docket no. 14) should be GRANTED.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 13, 2014          s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

17

## **PROOF OF SERVICE**

       I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: January 13, 2014        s/ Lisa C. Bartlett
                               Case Manager

18